IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| KATHRINE HALEY, | ) | Case No. 4:12-cv-00016 |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| COMMONWEALTH OF VIRGINIA DEPARTMENT OF HEALTH, | ) | By: Jackson L. Kiser  Senior United States District Judge |
| Defendant. | ) | |

Before me is Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure[ECF No. 5] , which was filed on September 9, 2012. Plaintiff filed a timely Response in Opposition to Defendant's Motion [ECF No. 11] on October 5, 2012, and Defendants followed by filing their Response in Support of Defendant's Motion [ECF No. 13] on October 9, 2012. On November 6, 2012, I heard oral argument from both sides outlining their respective positions on the law, the facts, and the nature and extent of the record. Having thoroughly reviewed the briefs, the record, and the arguments of counsel, the matter is now ripe for decision. For the reasons stated below, I will **GRANT** Defendant's Motion to Dismiss, **DISMISS** the case from the docket, and **DENY AS MOOT** any other pending motions in this case.

### I.   STATEMENT OF FACTS

The present action arises from the allegedly wrongful termination of Katherine Haley ("Plaintiff") by Virginia Department of Health ("Defendant"). Plaintiff is a fifty-six (56) year old female and resident of Pittsylvania County, Virginia. (*See* Compl. ¶ 7.) According to the

Complaint, Plaintiff suffers from severe psoriatic arthritis, which began in 2000, as well as fibromyalgia and reflex sympathetic dystrophy. (*See id.* ¶ 8.) Defendant is an agency of the Commonwealth of Virginia located in Richmond, Virginia. (*See id.* ¶ 10.)

According to the Complaint, Defendant hired Plaintiff in June 2005. (*See id.* ¶ 11.) Plaintiff worked as a medical facilities inspector, which involved "working from home, traveling to nursing homes and inspecting, typing, walking, and carrying." (*Id.*) Prior to her termination, Plaintiff never had any performance or disciplinary issues. (*See id.* ¶ 16.) According to the Complaint, however, Defendant terminated Plaintiff in December 2006 and placed her on long-term disability. (*See id.* ¶ 14.) Specifically, the Complaint alleges that Plaintiff had surgery on her left rotator cuff on June 15, 2006. (*See id.* ¶ 13.) Shortly thereafter, Plaintiff tore the meniscus in her knee in November 2006. (*See id.*) Then, in December 2006, Plaintiff requested an accommodation to work from home for two weeks while she was recovering from surgery, which the Defendant allegedly denied. (*See id.*) After denying the accommodation, Defendant terminated Plaintiff on December 15, 2006. (*See id.* ¶14.) Accordingly, Plaintiff claims that the "sole cause of Plaintiff being taken out of work in December, 2006 is the discriminatory actions taken against her by the Defendant." (*Id.* ¶ 18.)[1]

## II.   PROCEDURAL BACKGROUND

On June 6, 2012, Plaintiff filed the above-referenced Complaint, alleging a cause of action pursuant to 42 U.S.C. § 12112, *et seq.*, the Americans with Disabilities Act ("ADA" or

---

[1] Plaintiff also makes a blanket statement in ¶ 9 that "[t]he plaintiff suffered from . . . age discrimination while working for the Defendant." (Compl. ¶ 9.) This is the only time age discrimination is mentioned in the entire complaint. Moreover, Plaintiff has not addressed the claim in any of her briefings with the Court. At oral argument, Plaintiff appeared to abandon that claim. To the extent Plaintiff continues to plead this claim, it is dismissed for the same reasons stated below. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 79 (2000) (holding that Congress lacks the authority to abrogate a state's Eleventh Amendment sovereign immunity for age discrimination claims under the ADEA).

"Title I"), seeking reinstatement of benefits, as well as compensatory, liquidated and punitive damages in the amount of $1,000,000.

On September 9, 2012, Defendant filed a timely Motion to Dismiss based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (See Def.'s Mot. to Dismiss [ECF No. 5], and Def.'s Br. in Supp. of Mot. to Dismiss [ECF No. 6].) Defendant argues that this action is barred by the Eleventh Amendment of the United States Constitution. On October 5, 2012, Plaintiff filed a timely Response in Opposition to Defendant's Motion to Dismiss [ECF No. 11] (hereinafter "Pl.'s Resp. in Opp."), requesting that I deny Defendant's Motion. On October 9, 2012, Defendant filed a Response in Support of Defendant's Motion [ECF No. 13] (hereinafter "Def.'s Resp. in Support"), further delineating the basis for dismissal under the Eleventh Amendment.

### III.   STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction. "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). A challenge to a court's subject matter jurisdiction can be raised at any time and is properly considered on a motion under Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(h). The burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion rests with the plaintiff, the party asserting jurisdiction. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).[2]

---

[2] The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6). *See Andrews v. Daw,* 201 F.3d 521, 525 n.2 (4th Cir. 2000) ("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).") The recent trend, however, appears to treat Eleventh Amendment Immunity motions under Rule 12(b)(1). *See, e.g., Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008) ("[A]lthough the Eleventh Amendment immunity is not a 'true limit' on this Court's subject matter jurisdiction, the Court concludes that it is more appropriate to consider their argument under Fed. R. Civ. P. 12(b)(1) because it ultimately

When the defendant makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," such that "the facts alleged in the complaint are assumed to be true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Here, Defendant's Motion is a facial challenge, as Defendant does not allege any new relevant facts or dispute Plaintiff's pled facts. (*See* Def.'s Br. in Supp. of Mot. to Dismiss.) As a result, I must determine whether the Complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Id.*; *see also Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008).

## IV. DISCUSSION

The Eleventh Amendment provides, in part, that, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. AMEND. XI. Although the language of the Eleventh Amendment expressly refers to suits by citizens of another state, the United States Supreme Court "'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). As such, the "ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (quoting *Puerto Rico Aqueduct*

---

challenges this Court's ability to exercise its Article III power." (internal citations omitted)). I find the Court's rationale in *Beckham* persuasive and decide this Motion pursuant to Rule 12(b)(1).

*and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)) ("[T]he doctrine's central purpose is to 'accord the States the respect owed them as joint sovereigns.'").

The Eleventh Amendment has also been interpreted to extend immunity to "'state agents and state instrumentalities.'" *Lee-Thomas*, 666 F.3d at 248 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219 (4th Cir. 2001). It is clear, and the parties do not dispute, that Defendant is a state agency shielded by the Eleventh Amendment. *See Medicenters of America, Inc. v. Comm. of Va.*, 373 F. Supp. 305, 306 (E.D. Va. 1974) ("The suggestion . . . that the Virginia Department of Health is not cloaked with the shield of sovereign immunity is clearly erroneous.").

The Eleventh Amendment's bar to suit is not absolute, however. There are three recognized exceptions. First, Congress may abrogate state sovereign immunity. *See Garrett*, 531 U.S. at 363 (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 79 (2000)). Second, a state can waive its Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Third, a plaintiff can seek relief under the principles set forth in *Ex Parte Young*. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). As discussed below, however, none of these exceptions are applicable to the present case.

### A. Abrogation of Eleventh Amendment Immunity

"'Congress may abrogate the State's Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of congressional authority.'" *Lee-Thomas*, 666 F.3d at 249 (quoting *Garrett*, 531 U.S. at 363).[3] Congress's power to abrogate state sovereign immunity derives from its enforcement powers in § 5 of the Fourteenth

---

[3] Both parties agree that Congress intended to abrogate state sovereign immunity for claims under Title I of the ADA. See Def.'s Resp. in Support, 1 ("The parties agree that Congress intended that the States be amenable to actions under the ADA.").

- 5 -

Amendment. *See Tenn. v. Lane*, 541 U.S. 509, 518 (2004). Congress's power to abrogate is not without limits, however. *See City of Boerne v. Flores*, 521 U.S. 507, 518-34 (1997).

To determine whether an intended abrogation is within the scope of Congress's § 5 powers, the United States Supreme Court has set forth a three-part "congruence and proportionality" test. *See City of Boerne*, 521 U.S. at 518-34. Under this test, a reviewing court should: "1) identify the constitutional right that Congress sought to enforce when it enacted the statute; 2) determine whether there is a history and pattern of unconstitutional conduct by the States; and if so, 3) analyze whether the statute is an appropriate, congruent, and proportional response to the history and pattern of unconstitutional treatment." *Sarkissian v. W.Va Univ. Bd. of Governors*, Case No. 1:05-cv-144, 2007 WL 1308978, at *6 (N.D. W.Va. May 3, 2007) (internal citations omitted).

Here, Plaintiff cannot rely on abrogation to survive this Rule 12(b)(1) challenge. Specifically, the United States Supreme Court's decision in *Garrett* forecloses Plaintiff's argument. *See Garrett*, 531 U.S. at 363. In *Garrett*, the United States Supreme Court held that Congress lacks the authority to abrogate state sovereign immunity for claims by private citizens under Title I of the ADA. *Id.*; *see also Lee-Thomas*, 666 F.3d at 249.[4] Because Plaintiff is pursuing an employment accommodation claim under Title I of the ADA, *Garrett* controls.[5]

### B. Waiver of Eleventh Amendment Immunity

---

[4] At oral argument, Plaintiff clarified that she is pursuing this case under Title I of the ADA, which provides, in part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112; *See E.E.O.C. v. Federal Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008) ("Title I of the ADA prohibits discriminatory acts and omissions that abrogate the employment rights of disabled people, including the failure of an employer to make reasonable accommodations for an applicant or an employee's disability."); *see also Lee-Thomas*, 666 F.3d at 249 n.6 ("Title I of the ADA, as codified at 42 U.S.C. § 12112, proscribes the types of discriminatory acts and omission alleged by [Plaintinff], i.e., failure of an employer to make reasonable accommodations."); *Smith v. Va. Dept. of Agriculture & Consumer Servs.*, Case No. 3:12-cv-77, 2012 WL 2401749, at *9 (E.D. Va. 2012).

[5] At oral argument, Plaintiff conceded this point and abandoned this ground for proceeding.

A state may also waive its Eleventh Amendment protections. It is well settled, however, that a purported waiver of sovereign immunity is subject to a "stringent test" where the court will "carefully scrutinize state law to determine whether a state statute effects a waiver of the Eleventh Amendment." *Lee-Thomas*, 666 F.3d at 251. Under this stringent test, a waiver is found "'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" *Id.* at 250 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985)); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (holding that a state's consent to suit must be "unequivocally expressed"). To that effect, "[c]ourts will indulge every reasonable presumption against waiver." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (internal citations omitted).

To waive its Eleventh Amendment protections, the State "'must specify the State's intention to subject itself to suit in *federal court*.'" *Lee-Thomas*, 666 F.3d at 250 (quoting *Atascadero State Hosp.*, 234 U.S. 234 at 240) (emphasis in original). In other words, "a state does not waive its Eleventh Amendment immunity 'by consenting to suit in courts of its own creation, by stating its intention to sue and be sued, or even by authorizing suits against it in any court of competent jurisdiction.'" *Lee-Thomas*, 666 F.3d at 251 (quoting *Coll. Sav. Bank*, 527 U.S. at 676) (internal citations omitted); *see also Pennhurst*, 465 U.S. at 100 n.9 ("The Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." (internal citations omitted).)

Plaintiff argues that the General Assembly of Virginia has waived Defendant's sovereign immunity by enacting the Virginia Tort Claims Act ("VTCA"). (Pl.'s Resp. in Opp. at 1). Recognizing that the VTCA does not mention "federal court" or "Eleventh Amendment

immunity," Plaintiff cites to the Fourth Circuit's recent decision in *Lee-Thomas* for the proposition that Defendant is amenable to suit. Specifically, Plaintiff argues that, "the Court [in *Lee-Thomas*] refused to infer that the only way a state statute can satisfy the stringent test is to include the words 'federal courts' or 'United States' in statutory text." (Pl.'s Resp. in Opp. at 4 (citing *Lee-Thomas*, 666 F.3d at 251).)

Before turning to the analysis, it is easy to dispense with Plaintiff's reliance on *Lee-Thomas*. In *Lee-Thomas*, the Fourth Circuit reviewed whether Maryland had waived its Eleventh Amendment immunity for employment discrimination claims under Title I of the ADA, ultimately concluding that Maryland had waived its Eleventh Amendment immunity. *Lee-Thomas,* 666 F.3d at 244. While Plaintiff is correct that Maryland's statute did not contain the words "federal courts," the thrust of the Fourth Circuit's decision was not an interpretation of the immunity statute. Instead, the Fourth Circuit's decision was a determination of how much deference, if any, the district court should have afforded the Maryland Supreme Court's prior determination that the Maryland statute constituted a waiver of Maryland's Eleventh Amendment immunity. *Id.* at 250-52. Ultimately, the Fourth Circuit gave the state decision full weight, reasoning:

> [W]here a state's highest court has applied the *Atascadero* stringent test and carefully scrutinized state law to determine whether a state statute effects a waiver of Eleventh Amendment immunity, a federal court is obliged . . . to defer to that state court decision. Indeed, we should defer to the decision of the state's highest court **even when the statue, on its face, does not appear to pass the stringent test**, because the whole point of the test, requiring a clear declaration by the state of its waiver, it to be certain that the state in fact consents to suit . . . . Where the highest court of a state has construed a state statute as intending to waive the state's immunity to suit in federal court, the state's intent is just as clear as if the waiver were made explicit in a state statute.

*Id.* at 251 (internal citations and quotation marks omitted) (emphasis added). When a state's highest court—like in the present case—has not yet reviewed whether the state has waived immunity, then the reviewing federal court should apply the *Atascadero* test itself. *Id.*

Applying the *Atascadero* test, Virginia's General Assembly has not "stated by the most express language or by such overwhelming implication" any desire to waive Defendant's Eleventh Amendment sovereign immunity. *Lee-Thomas*, 666 F.3d at 250 (quoting *Atascadero*, 473 U.S. at 240). First, the Code of Virginia makes clear that Title 32, which creates the Virginia Department of Health, does not waive any of the Department's immunities—Eleventh Amendment or otherwise. *See* VA. CODE ANN. § 32.1-4 (2012) ("Nothing contained in this title shall be construed to be a waiver of the defense of sovereign immunity except where expressly provided by the laws of this Commonwealth."). Thus, any purported waiver of sovereign immunity must come from some other place in the Code of Virginia.

While Plaintiff attempts to rely on the VTCA as a basis for wavier, it is well settled that the VTCA does not waive Virginia's Eleventh Amendment immunity. *See McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1978) ("The Virginia Torts Claims Act while generally waiving sovereign immunity for tort claims filed in state courts, does not waive the state's Eleventh Amendment immunity."); *see also Creed v. Virginia*, 596 F. Supp. 2d 930, 937-39 (E.D. Va. 2009). Moreover, the Supreme Court of Virginia has reaffirmed that VTCA's limited waiver does not extend to state agencies. *See Rectors and Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244, 591 S.E.2d 76, 78 (2004) ("[T]he [VTCA] provides an express, limited waiver of only the Commonwealth's sovereign immunity but does not disturb the sovereign immunity of the Commonwealth's agencies."). As such, Plaintiff's reliance on the VTCA is misguided.

Plaintiff has not directed this Court to any persuasive authority showing that Defendant has waived its sovereign immunity generally—let alone waived its immunity from suit in federal court. While Plaintiff cites to the VTCA, the VTCA does not refer to the Eleventh Amendment, does not mention suits in federal court, and does not appear to even contemplate this type of action. *See e.g.*, *Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244 (Va. Cir. Ct. Lee County, July 11, 2002) (holding that the Virginian's with Disabilities act is the exclusive state remedy for employment discrimination). As such, I find that Defendant has not waived its Eleventh Amendment immunity from suit under Title I of the ADA.

### C. *Ex Parte Young*

Despite the foregoing discussion, "'the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.'" *Lee-Thomas*, 666 F.3d at 249 (quoting *Frew ex rel. Frew*, 540 U.S. at 437). *Ex Parte Young* is an "important limit on sovereign immunity" that allows "federal courts to vindicate federal rights." *Va. Office of Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011). This exception, however, is quite narrow. *See Pennhurst*, 465 U.S. 113, n.25. First, the private litigant must bring the action against the proper state officials. *See Lee-Thomas*, 666 F.3d at 249. Second, the relief must be properly categorized as prospective and injunctive in nature, as "[f]ederal courts may not award retroactive relief, for instance, money damages or its equivalent." *Frew ex rel. Frew*, 540 U.S. at 437. To determine whether a case is permissible under *Ex Parte Young*, the court "'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Stewart*, 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Under this straightforward inquiry, Plaintiff cannot rely on *Ex Parte Young* for two reasons. First, this present action is lodged against the Virginia Department of Health as opposed to state officials. *See Lee-Thomas*, 666 F.3d at 249. Second, the present action seeks retroactive money damages as opposed to prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651 (1974) (holding that requiring the state to provide retroactive payment of wrongfully withheld benefits was a violation of the Eleventh Amendment); *see also Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 788 (E.D. Va. 2003) ("[A]n award of back pay would be tantamount to a monetary award against the Commonwealth. Such an award would violate the Eleventh Amendment, and thus, is not permissible."); *Smith v. Va. Dept. of Agric. & Consumer Servs.*, Case No. 3:12-cv-77, 2012 WL 2401749, at *7 (E.D. Va. June 25, 2012) (unpublished) ("[T]o the extent [plaintiff] seeks monetary damages and/or back pay for . . . wrongful termination claims under Title I of the ADA, [plaintiff's] claims must be dismissed as barred by sovereign immunity."). Accordingly, Plaintiff cannot rely on *Ex Parte Young* and its progeny to overcome Eleventh Amendment limitations.[6]

---

[6] From the Complaint, it is unclear whether Plaintiff is seeking reinstatement of employment. In the Complaint, Plaintiff demands "such other relief as may be just and equitable." (Compl. ¶ 23). However, Plaintiff has not indicated whether she is, in fact, seeking reinstatement of employment. While courts have held that reinstatement of employment constitutes prospective injunctive relief under *Ex Parte Young*, *see, e.g.*, *Kronk v. Carroll County, Md.*, Case No. L-11-0277, 2012 WL 245059, at *8 (D. Md. Jan. 25, 2012), Plaintiff's case still fails to sue the proper party. Because Plaintiff brings this action against the agency itself, as opposed to state officials, I will dismiss this case.

- 12 -

## V. CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(1) Motion to Dismiss is **GRANTED**, and the case is hereby **DISMISSED**.

The clerk is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 13th day of November, 2012.

                                                      s/Jackson L. Kiser
                                                     SENIOR UNITED STATES DISTRICT JUDGE